**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DANIEL DUCHARME,**

      **Petitioner,**

**v.**                             **Case No. 3:15cv075-LC/CAS**

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 26, 2015, Petitioner Daniel Ducharme, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.   On September 4, 2015, Respondent filed an answer, with exhibits.   ECF No. 11.   Petitioner filed a reply on October 1, 2015.   ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner Daniel Ducharme was arrested on June 29, 2011, after service of a search warrant, and charged on August 4, 2011, by a nine-count information in Escambia County Circuit Court case number 2011-CF-3114 ("Case 1").   Exs. A1, A2, B.[1]   By second amended information filed January 27, 2012, the State of Florida ultimately charged Ducharme with three counts:   (1) trafficking in amphetamine or methamphetamine, 200 grams or more, a first degree felony in violation of section 893.135(1)(f)1.c., Florida Statutes; (2) possession, sale, or delivery of a firearm with an altered or removed serial number, a first degree misdemeanor in violation of section 790.27(2)(a), Florida Statutes; and (3) possession of drug paraphernalia, a first degree misdemeanor in violation of section 893.147(1), Florida Statutes.   Ex. B at 6.

In another Escambia County Circuit Court case, number 2011-CF-

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 11.

3513 ("Case 2"), the State charged Ducharme with forty-one (41) counts of

unlawful possession of a listed chemical (pseudoephedrine), a second

degree felony in violation of sections 893.033 and 893.149(1)(a), (b)(2),

Florida Statutes.   Ex. U1 at 1-7.   In addition, in both case numbers 2011-

CF-4123 ("Case 3") and 2011-CF-4214 ("Case 4"), the State charged

Ducharme with one count of sale, manufacture, delivery, or possession

with intent to sell, manufacture, or deliver methamphetamine, a second

degree felony in violation of section 893.13(1)(a), Florida Statutes.   *Id.* at

8A-8B.

On January 30, 2012, Ducharme signed a written plea agreement to

dispose of all his pending cases.   Ex. C.   At trial court proceedings held

that day, however, Ducharme repeatedly expressed equivocation about

accepting a plea to resolve all his pending cases.   Ex. D at 4-19.

Accordingly, at the conclusion of the hearing, Judge Jan Shackelford

announced, "We're going to pick a jury" in the first case, with the trial set for

the following day.   *Id.* at 19.   Jury selection then took place.   *Id.* at 24-77.

Prior to the start of trial on January 31, 2012, after Ducharme's

attorney asked for a continuance to locate and depose a possible

exculpatory witness, Ducharme's attorney told the trial judge, "My client

now indicates to me that he's willing to enter a state negotiated plea if the

State was willing to provide that plea."   Ex. E at 85.   Judge Shackelford

denied the defense request for an opportunity to enter a plea, referencing

what had transpired during the prior hearing and concluding, "You cannot

enter a plea today based on your comments from yesterday."   *Id.* at 91-92.

Ducharme proceeded to a jury trial, which concluded the same day

with the jury finding him guilty as charged on all three counts.   Ex. E at

294, Ex. G.   Judge Shackelford sentenced him to twenty (20) years in

prison on Count 1, with a minimum mandatory term of fifteen (15) years,

and credit for 217 days' time served.   Ex. E at 301, Ex. H.   On Counts 2

and 3, the judge sentenced him to time served.   Ex. E at 302.   Ducharme

subsequently entered a plea agreement, on February 6, 2012, for his three

remaining cases; he entered pleas of nolo contendere and was sentenced

to fifteen (15) years in prison on each count in those cases, to be served

concurrent to each other and concurrent to the sentence imposed in this

case.   Ex. U3.

Ducharme appealed his judgment and sentence to the First District

Court of Appeal (DCA), assigned case number 1D12-1003.   Exs. I (Notice

of Appeal), J (Initial Brief), K (Answer Brief), L (Reply Brief).   The First

DCA per curiam affirmed the case without a written opinion on June 7,

2013.   Ex. M; Ducharme v. State, 114 So. 3d 940 (Fla. 1st DCA 2013)

(table).

On April 1, 2014, Ducharme filed a pro se motion for post-conviction

relief in the state trial court, pursuant to Florida Rule of Criminal Procedure

3.850.   Ex. N.   Judge Shackelford summarily denied the Rule 3.850

motion on June 2, 2014.   Ex. O.   Ducharme appealed to the First DCA

and filed a pro se initial brief, assigned case number 1D14-3140.   Exs. P

(Notice of Appeal), Q (Initial Brief).   The State did not file an Answer Brief.

Ex. R.   The First DCA affirmed the case without a written opinion on

November 25, 2014.   Ex. S; Ducharme v. State, 155 So. 3d 342 (Fla. 1st

DCA 2014) (table).   Ducharme filed a motion for rehearing and request for

written opinion, which the First DCA denied on January 12, 2015.   Ex. T.

The mandate issued January 28, 2015.   Ex. S.

As indicated above, Ducharme filed a § 2254 petition in this Court on

February 26, 2015.   ECF No. 1.   He raises one issue:   "Counsel was

ineffective for failing to be knowledgeable of minimum mandatory

provisions, as well as for affirmatively misadvising Petitioner that he was

facing minimum mandatory sentence if Petitioner accepted favorable plea

from the State, which had the [e]ffect of rejection of plea due to such

affirmative misadvice that, if Petitioner were to accept plea, he would have

to serve his entire sentence day-for-day, thus counsel was in violation of

Petitioner's 6th and 14th Amendment rights." *Id.* at 5.   Respondent filed

an answer, with exhibits.   ECF No. 11.   Ducharme has filed a reply.   ECF

No. 13.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."   *Id.*

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was
deficient.   This requires showing that counsel made errors so
serious that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment.   Second,
the defendant must show that the deficient performance
prejudiced the defense.   This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

In his only ground, Petitioner Ducharme argues his trial counsel rendered ineffective assistance because counsel failed "to be knowledgeable of application of the sentencing structure Petitioner faced if

he accepted a plea offer from the state, as well as for affirmatively

misadvising Petitioner that, if he was to agree to the plea offer, he would

have to serve his sentence day-for-day (minimum mandatory)."   ECF No. 1

at 5.   Ducharme explains his argument:

> Prior to trial, counsel for Petitioner advised him of a plea offer of 15 years' incarceration.   This 15-year sentence would resolve all pending charges . . . .   However, unbeknownst to Petitioner, counsel misadvised him that, if he were to accept the 15-year plea offer, the sentence in which he would be agreeing to, would call for a minimum mandatory sentence.   Meaning, Petitioner would have to serve the entire sentence day for day. Counsel advised him that, pursuant to the Florida Statute 893.135(1)(f)(c), Petitioner would have to serve 15 calendar years, and that he was not eligible for gaintime credits towards his sentence.

> The above-mentioned statu[t]e states that, "Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of . . . , commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine," punishable as provided in s. 775.082, s. 775.083, or s. 775.084."   The statute goes further to say that, if the quantity involved is 200 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years.

> However, counsel misconstrued that, pursuant to the above-mentioned Florida Statute, Petitioner would have been sentenced to a mandatory minimum term, not a minimum mandatory sentence.   Meaning, the lower court was mandated to sentence Petitioner to a term of 15 years, not mandate him to serve said sentence as a mandatory, day-for-day sentence, as counsel misadvised.   Thus, Petitioner would serve

approximately 12.75 years' incarceration after application of gaintime; not 15 calendar years as was advised by counsel.

*Id.* at 5-6.

Thus, here, Ducharme claims that his attorney affirmatively misrepresented to him, in presenting the State's plea offer, that he would not be eligible for gain-time if he took the plea.    *Id.* at 5.    In his Rule 3.850 motion filed in state court, Ducharme raised a similar claim, although he did not characterize it as one of affirmative misrepresentation by counsel; rather, Ducharme claimed there that trial counsel did not "fully and thoroughly discuss the plea agreement" and, when his counsel told him the plea agreement called for a mandatory sentence of 15 years, Ducharme "assumed that the language used by counsel, was that he would have to serve a day-for-day sentence of 15 years' incarceration" but "[t]his was incorrect, as trafficking offenses are to receive gain-time credits."    Ex. N at 3.    He goes on to allege that "[c]ounsel failed to discuss any gain time available" and "counsel never fully explained the actual term of incarceration which could be served pursuant to the 15-year plea offer by the State, i.e., that Defendant would ultimately be entitled to basic gain time applied to his sentence."    *Id.* at 4.    He argued that "due to counsel's lack of knowledge of, or his failure to advise Defendant of gain-time entitlement,

he involuntarily rejected the 15-year offer from the State prior to trial."  *Id.* at 6.   At no point in his Rule 3.850 motion, however, did Ducharme argue his attorney affirmatively misrepresented to him that he would not be eligible for gain-time.  *See id.* at 3-8; *see also* ECF No. 11 (Respondent states, "There was no allegation in the state circuit court that counsel affirmatively advised him that the 15-year minimum mandatory sentence was not eligible for gain time.").   Therefore, to the extent that Ducharme raises a different claim in this court – that counsel affirmatively misadvised him regarding eligibility for gain time – that claim is not exhausted and is procedurally defaulted.

Assuming the claim Ducharme raises here is substantially similar to the one he raised in his Rule 3.850 motion filed in the state trial court, then he has exhausted it.   Ex. N at 3-8; *see* ECF No. 11 at 14-15 (Respondent states that "except for Petitioner's express representation that counsel affirmatively misadvised him that 'he was not eligible for gaintime credits toward his sentence[,]' Petitioner's claim in federal habeas is substantially the same as that presented to the state circuit court as Ground One of his Rule 3.850 motion for post-conviction relief.").   The state post-conviction court summarily denied the claim, explaining the <u>Strickland</u> standard and

then making the following findings:

> Defendant . . . alleges that his trial attorney erred in presenting the State's plea offer made prior to trial. Immediately before the jury panel was selected, the Court inquired as to any plea offers made by the State.   The State responded that it had offered Defendant a prison sentence of 15 years in exchange for a plea.   The State informed the Court that, if convicted on the trafficking charge, Defendant was facing a minimum mandatory prison sentence of 15 years. Defendant was also informed that he could be sentenced to a maximum of 30 years in prison if convicted of trafficking.

> When asked by the Court how he wanted to proceed, Defendant responded that he was "not sure."   In response, the Court asked Defendant if his attorney had explained the State's offer.   Defendant said that he was aware that the State had offered him a prison sentence of 15 years in prison to resolve his case.   Based on Defendant's continued equivocation with respect to the plea offer, the case proceeded to trial and he was ultimately found guilty.

> Defendant now claims that his attorney failed to inform him that, had he accepted the plea, he would have been eligible for gain time.   According to Defendant, if gain time was applied toward his sentence, he would have served "approximately 12 years and 8 months" in prison, rather than 15 years. Defendant writes that, had he known he would not have had to serve 15 years in prison, he would have accepted the State's offer.

> Defense counsel, in advising a defendant with respect to a plea offer, has a duty to inform him of "all pertinent matters bearing on the choice of which plea to enter and the particulars attendant upon each plea . . . ."   Neither the trial court nor counsel, however, is required to warn a defendant about every conceivable collateral consequence of a plea to criminal charges.

The Court finds that the State's offer was clearly
communicated to Defendant and that he was aware of the
terms.   Having considered the State's offer of 15 years in
prison, Defendant made the voluntary decision to reject the
plea and proceed to trial.   Since relief is not warranted where
counsel does not inform a client about the various ramifications
of gain time, this claim is summarily denied.

Ex. O at 2-3 (footnotes omitted).

The record supports the post-conviction court's finding that the

State's offer – a total sentence of 15 years in prison for all his cases – was

clearly communicated to Ducharme.   Nothing in the state court record

reflects any mention or discussion of gain time.

In particular, just before jury selection, defense counsel indicated the

State had retendered a plea offer, Ducharme wanted a second

continuance, and Ducharme may want another attorney:

MR. OBIN:   Judge, Lawrence Obin for Mr. Ducharme.   The
State has retendered a prior plea offer, same requirements as
last even though some of the amended information has actually
nol-prossed certain counts.   I think Mr. Ducharme is unsure
what he wants to do today.   I think that's the same as standing
moot but he did indicate to me a request for a continuance.
I don't know if that's in lieu of or in line of a, searching for other
counsel or if that's in line with a Nelson hearing.

THE COURT:   Raise your right hand, sir.

(Defendant sworn)

THE COURT:   State your name.

THE DEFENDANT:   Daniel Adam Ducharme.

THE COURT:   Are you asking for a continuance?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   Why?

THE DEFENDANT:   Wanting to check with other counsel to see if I can get a little bit better options because I don't feel my options here are being done right.

THE COURT:   Are you appointed counsel in this case?

MR. OBIN:   I am.

THE COURT:   Well, this case began on July 1st of 2011 and it is now January 30th.   And how many times has it been continued, Susan?

THE CLERK:   It has been continued once.

THE COURT:   This would be a second continuance?

THE CLERK:   Yes, ma'am.

THE COURT:   And if we had, if I continued the case then it would not be able to be tried until I think the end of March, early April because I don't – this is an announcement for the DCA – I don't do criminal trials every week.   So if I had to continue the case – are you just hoping that some other attorney can get a better deal from the State?

THE DEFENDANT:   No, ma'am.

THE COURT:   Well, what is it that you want a continuance for?

THE DEFENDANT:   Because I don't think Mr. Obin has done everything he can do in doing this case.   I've met with him a couple of times and it was brief and I just, I believe there's things that I haven't talked to him about that have even scratched the surface of this whole case.

Ex. D at 4-6.   The judge then asked about the work defense counsel had

done on the case:

THE COURT:   Okay.   Mr. Obin, tell me what you've done in the case.

MR. OBIN:   Judge, I've reviewed all of the discovery.   I've printed off an entire copy of voluminous discovery, not only in this case number but all of his case numbers.   I've delivered that copy to him.   I've discussed what his version of events are in detail as to the creation of the defense.   **I've explained to him his plea offer; the fact that the minimum mandatory in Florida is a minimum mandatory; that if he was convicted of these charges, my understanding is minimum mandatory is exactly that.   Based upon what he's charged with, it would be 15 years in state prison; that the other charges could be run potentially consecutive or concurrent.**

I've taken – at the last minute I rearranged my schedule, took the deposition of co-defendants Nix [and] Quigley who have pled out during the last docket day, made arrangements for Mr. Williams, received the testimony of Nix and Quigley, relayed that information to my client.

I don't know what more I could have done to prepare for this case adequately.

THE COURT:   Hang on a second, sir.   Without asking the content of your conversations but you've met with your client?

How many times have you talked to him?

MR. OBIN:   Well, I think I've meet with him at the jail at least three times and talked to him during docket day numerous times, Your Honor.

THE COURT:   Okay.   And you're prepared to go to trial this week?

MR. OBIN:   Yes.

THE COURT:   All right.   Mr. Ducharme, what is it that he hasn't done that you wanted him to do?

THE DEFENDANT:   I just got the motion of discovery.   Today I just got the point sheet.   There's a lot of things I haven't been able to look over and go through as far as this whole case.   I mean –

THE COURT:   Like what?

THE DEFENDANT:   Going through my discovery, finding out what they are saying happened and whatnot and trying to put the truth to it.

THE COURT:   All right.   He said he's talked to you three times, at least three times at the jail.

THE DEFENDANT:   Yeah and twice was just about the plea bargain.

THE COURT:   Okay.   All right.   Well what, I'm treating this as a Nelson inquiry and I'm finding that there is no reasonable cause to believe that the counsel is rendering ineffective assistance.   I'm going to deny the request for a continuance because Mr. Ducharme has not stated any real reason that he wants or needs a continuance other than he wants, it sounds like it may be a stall tactic and Mr. Ducharme, you are, of

course, entitled to represent yourself and I can do that inquiry if you want to but otherwise it is going to trial this week and with Mr. Oden – sorry, Obin as your attorney and I would encourage you to keep him as your attorney.

*Id.* at 6-8 (bold emphasis added).   The judge then inquired about the

charges in this case and whether there were "any mandatory minimums

that attach."   *Id.* at 8.   The prosecutor answered, "A 15-year minimum

mandatory for Count 1, trafficking."   *Id.*   The judge asked what the State's

plea offer was and the prosecutor answered, "It is fifteen years to cover all."

*Id.* at 9.   The judge addressed Mr. Ducharme:

> THE COURT:   Okay.   Well, Mr. Ducharme, this is where we are.   We can pick a jury and try your case tomorrow.   If you go to trial and you're found not guilty, then you obviously made the right decision.
>
>     If you're found guilty as charged, I am not bound by the plea offer and I think on the case tomorrow, it is a 15 years minimum mandatory plus there's two other counts. . . .
>
> . . . .
>
> THE COURT:   So the trafficking he could get 30 years in state prison with a 15 year minimum mandatory?
>
> MR. WILLIAMS:   Yes, Judge.
>
> THE COURT:   Mr. Ducharme, where we are is that you've got a case that's ready to go and you're facing 30 years plus a year each for the county cases if you're found guilty as charged. I don't have to – in fact, as soon as we pick a jury, the plea offer is off the table and that's the end of it.   Not to mention that you

have these other cases, which have 30 counts of second degree felonies so, I mean, it is very easy to get the fact that you're facing over a hundred years in state prison.

And I'm not bound by anything if you're found guilty.   I can run the sentences concurrent or I can run them consecutive, which means I can run them one after another. So I don't know anything about your case or the strengths or weaknesses of your case but it is time for you to make a decision as to whether or not you want to go to trial.   But the bottom line is **the offer from the State, my understanding to cover everything, is the 15 years and it is a mandatory minimum on one case**, and I would give you the maximum credit that he has but or you can, certainly you have the right to go to trial and that's your right but I just want to make sure you understand so there's no question later on that you really are facing on the one case even for this week 30 plus two years if you're found guilty.

Do you want to sit down and talk to Mr. Obin some more?

THE DEFENDANT:   I reckon.

THE COURT:   All right.   Then we'll call you up and you're going to make a decision.

*Id.* at 9-11 (bold emphasis added).   After some time, the proceedings

resumed:

MR. OBIN:   Judge, I believe Mr. Ducharme is at the point that he needs to make a decision whether he's going to get dressed and have his trial today or whether he's going to enter a plea to the plea offer or straight up to the Court or give an indication of what he expects today.

THE COURT:   What are you going to do, Mr. Ducharme?

THE DEFENDANT:   I'm not sure.   I just don't feel comfortable with that, with what I know about it.

THE COURT:   Okay.   Well, you've expressed that and that's on the record and if there's an appeal then you can take it up on appeal.

THE DEFENDANT:   If I take a plea bargain then there ain't no appeal –

THE COURT:   Well –

THE DEFENDANT:   -- as Mr. Obin has stated to me.   What is there, I mean, I know I'm guilty of some things but I'm not guilty of some of this.   I'm sorry.

THE COURT:   The reason I'm frustrated, Mr. Ducharme, is you're doing a thing that sometimes defendants do which is I'm waiting to try to let you finish and then as soon as I start speaking, you speak over me, which makes it impossible for the court reporter.

So I'm trying to give you a chance to say what you need to say and then if I start speaking, I need you just to stop so we don't have a double record.

I'm not giving you advise on appeal issues but you've got a choice of pleading straight up to the Court, you can take the State's plea offer or we can go to trial and we're going to pick a jury this morning and it is time to make a decision.

So you've indicated and expressed it in the record that you're not comfortable with the attorney situation and that has been noted for the record so beyond that, I've said that I'm not going to find that he's ineffective and you have not asked to represent yourself and I'm not going to continue the case. So this is where we are.   What is your choice?

THE DEFENDANT:   I guess just plea out to you, Judge, and get on with it.

THE COURT:   To the new Judge?

THE DEFENDANT:   To you.

THE COURT:   You want to just plead straight up to me or are you going to take the plea –

THE DEFENDANT:   I might as well.   I might as well just lay it on and whatever happens happens.

THE COURT:   Well, you understand, sir, you understand – I mean, you're certainly welcome to do that but **the State's offer, there's a minimum mandatory 15 years that attaches to these cases, at least this one case so I would have to give you at least 15 years and you've been offered that for everything is my understanding**.

THE DEFENDANT:   I'm not sure what to do.   I mean, I'm being honest, I'm being straight up.   I don't know.   I'm confused.   I don't know exactly what all to do.

THE COURT:   What are you confused about, sir?

THE DEFENDANT:   Everything in general, I mean it is –

THE COURT:   Okay.   Well, that's a great statement but you're not telling me what you're confused about.   Has Mr. Obin explained the plea offer to you?

THE DEFENDANT:   Basically 15 years to cover everything.

THE COURT:   Okay.   And I've explained to you, I didn't do the exact math, I gave you a rough estimate that on the case that we're set for trial on [Case 1], you're facing 30 years plus two in county jail so 32 and then you're facing many, many, many

more years on all the other cases.   So you know – and I just
said over a hundred years because I didn't want to get the
calculator out.   So what part are you confused about?

THE DEFENDANT:   I'm just not sure what decision – I've
asked him to talk about what, our defense strategy and stuff like
that and it seems like most of everything that he's wanting to
talk about was just go for the deal.   I just feel like I've been, I'm
being pushed on this deal.

THE COURT:   Okay.   Then let's get him dressed out. . . .
We will pick it and we talked about trying it tomorrow.   Okay.
We'll get you dressed out, Mr. Ducharme.   We'll pick your jury
in a little bit.

*Id.* at 12-15 (bold emphasis added).   After Ducharme got dressed out, his

attorney asked the judge for "one last opportunity to make sure this is what

Mr. Ducharme wants to do" before bringing in the prospective jurors.   *Id.* at

16.   The judge commented, "I just have to be careful because if he really

doesn't want to enter a plea, it is just easier to try, I've learned this from

other experiences, just to try the case."   *Id.*   Defense counsel agreed but

stated, "[I]f this is something that he wants to do, it is, I think we could all

agree that it is best for him to do this and not have to take the impaneled

prospective jurors, send them somewhere or break into another

courtroom."   *Id.*   The following transpired after Ducharme returned to the

courtroom, his attorney provided him with the plea offer, and he was sworn:

THE COURT:   Mr. Ducharme, have you had a chance to talk to

your attorney about the charges, evidence and possible defenses?

THE DEFENDANT:    Minimally, yes.

THE COURT:    Okay.    Have you talked to him about the plea offer made by the State to resolve your case today?

THE DEFENDANT:    Yes.

THE COURT:    Is anybody forcing you or threatening you into entering a plea today?

THE DEFENDANT:    No.

THE COURT:    You've indicated you're not happy with your attorney; do you feel like it is in your best interest given the sentence that you're facing, potential sentences you're facing to enter a plea today?

THE DEFENDANT:    The best I can think of.    I mean –

THE COURT:    Well, sir, you have to answer the question.

THE DEFENDANT:    I'm answering it the best I know how to answer it, ma'am.    I don't know.

THE COURT:    We're going to pick a jury.

MR. OBIN:    Yes, Your Honor.

THE COURT:    Sir, if you make a decision that you want to enter a plea because it is in your best interest, then I'll take your plea but I've learned that it is easier to try your case and whatever happens happens, then to deal with this a month from now or six months from now or whatever because you're waffling.    What you're trying to do is you're trying to say just enough and that's okay because we'll just try your case and

that's okay, I've got time to try it, we'll try it tomorrow and whatever happens, if you're found not guilty, fine; if you're found guilty, then I'll sentence you and that's the way it will work.

*Id.* at 18-19.   A jury was then selected.   *Id.* at 20-77.

As evidenced by the above excerpts from the state trial court record, both defense counsel and the judge indicated the plea offer was for 15 years to resolve all Ducharme's cases.   It does appear, from a review of the above excerpts as well as the written plea offer, discussed *infra*, that the 15-year sentence would have included a 15-year minimum mandatory sentence for the first count in Case 1, although some of the statements in the transcript appear ambiguous or incomplete.   Further, although defense counsel states he believed the 15-year sentence "minimum mandatory" meant "exactly that" and "the fact that the minimum mandatory in Florida is a minimum mandatory," defense counsel never explicitly states on the record that "exactly that" means Ducharme would have to serve 15 years day-for-day with no gain time eligibility if he accepted the plea.

Moreover, as indicated above, Ducharme had actually signed the written plea agreement on January 30, 2012 (the day of jury selection), and on January 31, 2012 (the day the trial started).   Ex. C.   Ducharme's signature on the agreement reflects he had read the information, and he

understood the charges and the maximum penalties. *Id.* The signed

agreement indicated the "Sentence Recommendation" included a 15-year

minimum mandatory sentence on Count 1 in Case 1. *Id.* at 98-99. One

statement on the agreement, titled "Certification of Defendant," provides, in

pertinent part: "My attorney, the Court and the prosecutor have not made

any promises nor have I relied on any representations as to the actual time

I would serve if I were to be incarcerated under the terms of this Sentence

Recommendation." *Id.* at 101. In addition, as explained above, no

statements during the colloquy in the trial court concern gain time eligibility.

In <u>Missouri v. Frye</u>, 566 U.S. 133, 140-44 (2012), and <u>Lafler v.

Cooper</u>, 566 U.S. 156, 162 (2012), the U.S. Supreme Court recognized the

Sixth Amendment right to counsel extends to the plea-bargaining process

and criminal defendants are "entitled to the effective assistance of

competent counsel" during plea negotiations. The Court considered how

to apply the prejudice prong of the <u>Strickland</u> IAC test and concluded that,

to show prejudice where a plea offer has lapsed or been rejected because

of counsel's ineffective assistance, a defendant must demonstrate a

reasonable probability that (1) he would have accepted the plea offer but

for counsel's ineffective assistance, (2) the plea would have been entered

without the prosecution canceling it or the trial court refusing to accept it, and (3) the plea would have resulted in a lesser charge or a lower sentence.   <u>Frye</u>, 566 U.S. at 147-49; <u>Lafler</u>, 566 U.S. at 163-64.

Here, if defense counsel did advise Ducharme he would not be eligible for gain-time for the minimum mandatory sentence, such advice would have been erroneous.   *See* <u>Mastay v. McDonough</u>, 928 So. 2d 512 (Fla. 1st DCA 2006) (granting certiorari and holding trial court departed from essential requirements of law when it denied petition challenging Department of Corrections' determination petitioner was not entitled to earn incentive gain-time while serving minimum mandatory term for trafficking in cocaine pursuant to section 893.135, Florida Statutes, and explaining: "[W]hen the legislature intends to prohibit individuals from being eligible for gain-time during the service of a mandatory-minimum term of imprisonment, it uses explicit language to that effect.   By not including such language in section 893.135(3), the legislature has demonstrated its intent to permit the award of incentive gain-time during the service of a mandatory-minimum sentence.").   In such circumstance, however, to show prejudice, Ducharme would have to show that, assuming he would have accepted the plea offer but for any ineffective assistance, the trial court

would have accepted the plea.

Ducharme has not shown, and the record does not reflect, that the state trial court would have accepted the plea.   In particular, in addition to the above excerpts, the record indicates that, on January 31, 2012, before the trial started, defense counsel requested a two-week continuance.   Ex. E at 80-84.   Defense counsel explained that he visited Ducharme the night before, after jury selection, and "[w]ithout divulging any confidential client information that my client may or may not have indicated to me, I have become aware that there is – or has been – I have become aware that there is potentially an alleged exculpatory witness in the form of Laurie Germonto."   *Id.* at 80.   The judge inquired.   *Id.* at 81-84.   The judge then stated, "I'll give you an answer on that," and asked if there were "any other pretrial matters."   *Id.* at 85.   Defense counsel indicated Ducharme wanted to take the plea offer:

> MR. OBIN:   My client now indicates to me that he's willing to enter a state negotiated plea if the State was willing to provide that plea.   That's the representation.   I don't know if the Court would be willing to do that.
>
> THE COURT:   Yeah, I don't know either about that.   Again, my staff attorney is coming, so let me talk to her about that. I don't know of Mr. Williams – I mean, at this point it's really a plea straight up to the Court.   I don't know if Mr. Williams would be willing today to –

MR. WILLIAMS:   If I could speak with my case officer, Judge, if that's going to be an issue.

*Id.*   After addressing additional matters and taking a short recess, the

judge denied the defense request for a continuance and also denied the

request to enter a plea:

THE COURT:   Okay.   First of all, on the issue – we're back on the record.   Defendant is present with Counsel, Assistant State Attorney is present.

On the issue of a continuance, I think given the representation made, the uncertainty of what she may or may not say and given the State's representations of the proof they believe they are going to offer today, I am going to deny the request for continuance to try and locate the witness.

The second issue is whether I'll allow the defendant to plea today.   Here's the thing.   Yesterday, Mr. Ducharme, I gave you about three opportunities to plea, and each time you were equivocal.   Each time you made statements like, my attorney talked to me minimally or I'm not clear about things, I don't know what's going on.   You said you didn't – weren't happy with your attorney.   And if I take your plea today, whether you plead straight up or take the State's offer, those issues are still going to be out there.

But if we try the case, then the record – if you're found guilty, the record will support the work your attorney has done and the weight of the evidence against you.

If you're found not guilty, then you're found not guilty and you'll be discharged on this case and we'll deal with your other cases.

But I told you yesterday that I was not going to have it where you were trying to set up a record to suggest that your plea was not voluntary or some other issue, and you said just enough to put me in a situation where I feel I have no choice but to say, no, you cannot enter a plea and we are going to trial today, and then the record will be established one way or the other.   So that's where we are.   You cannot enter a plea today based on your comments from yesterday.

So if you want to invoke the rule, let's get the witnesses in – I'm sure Mr. Obin does – and let's get started with the trial.

MR. OBIN:   Judge, in response – in response to your ruling, I just want to tender Mr. Ducharme's signed plea offer and scoresheet simply to show that Mr. Ducharme would have been willing – had the Court allowed, to enter a plea to a state offered plea offer and that Mr. Williams was offering said plea offer.

If there's any need to actually swear my client to his willingness, even though the Court has indicated as it has, by all means I would request the Court do that just so the record is clear that he would have been willing to enter a state negotiated plea offer and the State was still willing to negotiate that plea offer.

THE COURT:   You can certainly put the plea offer and the – although as I said yesterday, after jury selection, I'm not bound by anything if he's found guilty.   I don't think there's any point in having a discussion with your client about anything at this point on that subject.

*Id.* at 90-93.   Thus, as evidenced by the above excerpts, the trial judge

ultimately would not allow Ducharme to enter the plea.   *See* Frye, 566 U.S.

at 148 ("In order to complete a showing of Strickland prejudice, defendants

who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.  <u>This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it</u>." (citations omitted; emphasis added)); <u>Lafler</u>, 566 U.S. at 168 ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise.").

Based on the foregoing, Petitioner Ducharme has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This petition should be denied.

## Conclusion

Based on the foregoing, Petitioner Daniel Ducharme is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 10, 2017.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**